UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

THE ESTATE OF STEVE A. KONELL,

                Plaintiff,

      v.

ALLIED PROPERTY & CASUALTY
INSURANCE COMPANY,  a member of
NATIONWIDE INSURANCE,

                Defendant.

No. 3:10-cv-955-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

      To resolve whether a loss is covered by the insurance policy issued by defendant, Allied

Property & Casualty Insurance Company ("Nationwide"), to plaintiff, the Estate of Steve A.

Konell ("Konell Estate"), Nationwide filed a Motion for Summary Judgment (docket #34) .  At a

hearing held on June 10, 2013, that motion was denied as moot as to the real party in interest and

claim preclusion issues, denied as to the statute of limitations issue, and in all other respects,

taken under advisement pending receipt of supplemental briefing on the ensuing loss issue

(docket # 73).  In addition, summary judgment was granted to the Konell Estate on the statute of limitations issue.

## I.   <u>Cause of Loss</u>

Resolution of the remaining issues depends on whether a windstorm on January 17-19, 2009, caused the loss suffered at the Konell residence.  The Konell Estate argues that the windstorm caused fuel oil to leak from a line to the furnace which had been temporarily disconnected for repair and not capped.  The parties agree that the claimed damage to the Konell residence is due to the ""[d]ischarge, dispersal, seepage, migration, release or escape of pollutants" which is not a covered peril under the policy.  Policy, Section I – Exclusions, ¶ A.2.e.(5).  However, the exclusion for pollution damage contains an exception for pollution "caused by a Peril Insurance Against" which includes a "windstorm."  *Id.*  Due to the competing opinions offered by the parties' experts, a genuine issue of material fact exists as to whether the windstorm caused the oil to leak.

Even if a windstorm contributed in some part to the pollution damage, Nationwide argues that coverage is precluded by the exclusion for "faulty, inadequate or defective . . . workmanship, repair [and/or] maintenance of part of all of any property."  Policy, Section I – Exclusions, ¶ B.3.b. & d.  However, the Konell Estate has submitted facts to create a genuine issue of material fact as to whether the oil leakage was due to faulty or inadequate workmanship or maintenance of the fuel oil line.

## II.   <u>Ensuing Loss</u>

Despite these fact issues, the Konell Estate alleges in the Fourth Claim that coverage is nonetheless provided by the ensuing loss provision.  As an exception to the faulty workmanship exclusion, the Policy provides that "any ensuing loss to property described in Coverages A and B

not precluded in **SECTION I – EXCLUSIONS** in A. above is covered." Policy, Section I –

Exclusions, ¶ B (emphasis in original).[1]  Applying this provision, the Konell Estate argues that

the windstorm occurred after any faulty workmanship and, thus, was a subsequent or ensuing

cause of the loss.

    Nationwide responds that this case does not present two separate but contributing perils

to one loss.  Instead, a windstorm is the only way in which pollution damage can fall within a

potentially covered loss in the first instance.  Since there is only one covered loss, it contends

that there can be no ensuing loss.  In other words, coverage is excluded for a loss caused in part

by a listed exclusion (faulty workmanship), even though the ensuing loss provision provides

coverage for that same loss if caused in part by a covered peril (windstorm).

    The ensuing loss provision in the Policy at issue here is a "common version" often found

in insurance policies.  Christopher C. French, *The "Ensuing Loss" Clause in Insurance Policies:*

*The Forgotten and Misunderstood Antidote to Anti-Concurrent Causation Exclusions*, 13 Nev L

J 216, 218 (2012).  Although originally created to cover fire damage following an earthquake,

the ensuing loss clause has been expanded over time for losses caused by multiple perils "to

ensure that losses caused at least in part by a covered peril remain covered under property

policies even if an excluded peril also played a role in causing the loss."  *Id* at 217.  However, as

astutely noted by one court, the ensuing loss clauses, if "read literally, are meaningless," filled as

they are with "self-contradictory gibberish."  *Lake Charles Harbor & Terminal Dist. v. Imperial*

*Cas. & Indem. Co.,* 857 F2d 286, 287-88 (5th Cir 1988).  As a result, courts disagree as to when

an ensuing loss provision provides coverage.  Some courts hold that it provides coverage to an

excluded loss resulting from or caused by a covered cause of loss, while other courts have

---

[1] In addition, as an exception to the pollution exclusion in ¶ A.2.e.5, the Policy provides that "any ensuing loss to
property described in Coverages **A, B** and **C** not precluded by any other provision in this policy is covered."  Policy,
Section I – Perils Insured Against, ¶ A. Exception To 2.e. (emphasis in original).

applied it only in instances where a covered cause of loss occurs as a result of an excluded loss. 4 LAW AND PRAC. OF INS. COVERAGE LITIG., § 45:35 (June 2012) (citing cases).

The Oregon Court of Appeals has addressed insurance coverage for concurrent causes of a loss.  In *Naumes, Inc. v. Landmark Ins. Co.*, 119 Or App 79, 849 P2d 554 (1993), property was damaged by a debris torrent generated by heavy rainfall.  Because the policy excluded a loss caused by "surface waters," the insurer denied coverage.  However, the policy also included a "concurrent causation-exclusion endorsement" which provided that "an ensuing loss not excluded or excepted in this policy is covered" and excluded a loss caused by "weather conditions" that "contribute in any way with a cause or event excluded in the policy to produce the loss."  In a brief opinion, the court did not mention "ensuing loss."  Instead, to resolve what it termed "multiple causes of a single loss," the court adopted the "efficient proximate cause" as the "relevant cause for determining coverage." *Id* at 82, 849 P2d at 555, citing COUCH ON INSURANCE 2D, § 74:711 (Rev ed. 1983).  It defined "efficient proximate cause" as "the active and efficient cause that sets in motion a train of events which bring about a result without the intervention of any force, starting and working actively and efficiently from a new and independent force." *Id*, citing COUCH ON INSURANCE 2D, §§ 74:696 & 74: 701.  Given disputed facts as to the proximate cause of the loss, the court denied summary judgment and did not further discuss the ensuing loss provision.

The parties have not cited, and this court has not found, any other Oregon case which addresses an ensuing loss provision.  Thus, under the approach adopted by *Naumes*, if faulty workmanship and a windstorm are multiple causes of the loss here, then the issue is which was the "efficient proximate cause," a disputed factual issue.  However, these two potential causes are not independent, concurrent causes.  Neither the windstorm nor the alleged faulty

workmanship alone could have caused the loss.  In that situation, it is not clear whether either

cause could be considered an "efficient proximate cause."

Moreover, after a thorough analysis of the case law, one commentator rejects Oregon's

"efficient proximate cause" test as sometimes leading to wrong results and presenting a factual

issue when none exists:

> One of the reasons tort law is inapplicable is because it is driven by assignment of blame to parties and analysis of parties' duties of care, neither of which is relevant to interpreting and applying insurance policy language.  Whether a policy covers a loss is a question of contract interpretation, not an exercise in assigning blame.
>
> Moreover, tort concepts such as "efficient proximate cause" are malleable and lead to metaphysical arguments regarding which "cause" in a long causation chain of events was the most important cause of the loss or which "cause" started the causation chain that led to the loss.  Attempting to determine the "efficient proximate cause" of a loss in insurance disputes is misguided because most losses have many causes and it is a legal fiction to suggest that only one peril caused a loss.  Consequently, applying tort causation concepts to insurance disputes not only increases the costs of litigation by encouraging debates regarding "the" cause of the loss, but also leads to unpredictable and inconsistent results.

13 Nev L J at 221 (footnotes omitted).

According to that commentator, the ensuing loss provision "is intended to preserve

coverage for losses caused, in part, by an excluded peril if a loss follows (or 'ensues') from a

covered peril.  Indeed, the very purpose of the ensuing loss clause is to clarify that the exclusions

should not swallow the basic coverage provided by the policy."  *Id* at 219.  For example, if a

homeowner's roof leaks due to improper installation and intruding rainwater causes damage to

the interior of the house, then the insurer may attempt to avoid coverage by relying on the

exclusion for faulty workmanship.  This commentator argues that when applying the ensuing loss

clause, "the claim should be covered regardless of whether excluded perils [negligent installation

of the roof] were also involved in causing the loss because the loss or damage ensued from, at least in part, a covered peril [rainwater damage]." *Id*. Based on "the original purpose of the ensuing loss clause, the policy language in the clause, and the existing rules of policy interpretation," that commentator proposes that "if a covered peril plays any role in the causation chain of events that leads to a loss, then the loss should be covered regardless of whether the policy contains an anti-concurrent causation exclusion." *Id* at 249. "Stated differently, unless a loss is caused solely by excluded perils, the loss should be covered." *Id* at 251.

This same approach was adopted by the Ninth Circuit in *Costco Wholesale Corp. v. Commonwealth Ins. Co.,* 45 Fed Appx 646 (9th Cir 2002), applying Washington law. Costco sought recovery for losses incurred in connection with damage to its new warehouse when the building's foundation settled. The insurance policy insured against movement of the earth, but contained a faulty or defective workmanship exclusion which was limited by an ensuing loss provision. The Ninth Circuit interpreted the ensuing loss exception to restore coverage despite the faulty workmanship exclusion. It succinctly noted that movement of the earth caused the loss and was not an excluded peril, that such movement was "distinct from the defective design," and that "the loss did ensue from the defective design." *Id* at 647.

More recently, the Washington Supreme Court has interpreted an ensuing loss clause and clarified application of the efficient proximate cause rule. "While coverage may be excluded when a certain peril causes a loss, a resulting or ensuing loss clause operates to carve out an exception to the policy exclusion." *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 174 Wash2d 501, 514, 276 P3d 300, 307 (2012) (citations omitted). If a series of events result in a loss, damage resulting from an uncovered event will not be covered, but damage resulting from a covered event will remain covered. *Id.*

> [T]he dispositive question in analyzing ensuing loss clauses is
> whether the loss that ensues from the excluded event is covered.
> or excluded. If the ensuing loss is also an excluded peril or an
> excluded loss under the policy, there is no coverage. But if the
> policy covers the peril or loss that results from the excluded event,
> then the ensuing loss clause provides coverage.

*Id* at 516, 276 P3d at 307 (citations omitted).

In contrast, the efficient proximate cause rule "is a rule of law" that "applies only when two or more perils combine in sequence to cause a loss and a *covered peril* is the predominant or efficient cause of the loss. In such a situation, the efficient proximate cause rule mandates coverage, even if an excluded event appears in the chain of causation that ultimately produces the loss." *Id* at 519, 276 P3d at 309 (emphasis in original; citations omitted). Inversely, if an excluded peril "sets in motion a causal chain that includes covered perils, the efficient proximate cause rule does not mandate exclusion of the loss." *Id* (citations omitted). In that event, the insurer may insert a provision in the policy to deny coverage. *Id* at 520, 276 P3d at 309.

Accordingly, the court held that the ensuing loss clause covered damages associated with repairing and reconstructed a concrete slab which collapsed (a covered peril) when the shoring gave way due to defective workmanship (an excluded peril). *Id*. However, the cost of repairing the shoring work was not covered due to the faulty workmanship and defective design exclusions. *Id* at 510-11, 276 P3d at 305. Applying the same interpretation of the ensuing loss clause in the companion case of *Sprague v. Safeco Ins. Co. of Am.*, 174 Wash2d 524, 276 P2d 1270 (2012), the court held that the collapse of a deck was not a covered loss because it was caused only by the excluded perils of defective workmanship and rot. [2]

---

[2] Similarly, applying Oregon law, this court has found that the ensuing loss clause "does not reinsert coverage for excluded losses, but reaffirms coverage for secondary losses ultimately caused by excluded perils. . . . In other words, an 'ensuing loss provision does not cover loss caused by the excluded peril, but rather covers loss caused to other property wholly separate from the defective property itself." *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, 2002 WL 31495830, at *19 (D Or 2002) (citations omitted). For instance, if defectively installed roof flashing allows water to leak into the wall cavity, then subsequent damage caused by water, such as dry rot or mold, to the interior of the house is caused by the faulty workmanship and is not

This court is bound to follow Oregon law which applies the efficient proximate cause rule.  However, as explained in *Vision One*, "a policy provision is not the same as a controlling rule of insurance contract interpretation."  174 Wash 2d at 520, 276 P3d at 309.  Here the issue is how to apply the ensuing loss exception to the faulty workmanship exclusion in the Policy.

Given the absence of controlling Oregon law, this court must interpret the wording of the Policy.  The ensuing loss exception to the faulty workmanship exclusion is broadly worded by covering "any ensuing loss to property  . . . not precluded."  Thus, a loss resulting from faulty workmanship is covered if it is caused by an otherwise covered event.  Here the loss was caused by the escape of pollutants which is a covered peril if caused by a windstorm.  According to the Konell Estate, the windstorm (covered peril) caused the disconnected fuel line (excluded peril) to leak, resulting in pollution damage (covered loss if caused by the covered peril of a windstorm) to the Konell residence.  Consistent with the approach taken by Washington, as well as by the analysis proffered by the commentator discussed above, the ensuing loss provision provides coverage for the loss.  Given the current state of the law, this court is persuaded that Oregon would interpret the ensuing loss provision in this manner.  Otherwise, the ensuing loss exception to the faulty workmanship exclusion would be rendered meaningless.

As a result, whether faulty workmanship played any role in the loss that occurred at the Konell residence, coverage exists under the ensuing loss provision if, as the Konell Estate contends, a windstorm, which is a covered peril, caused fuel oil to leak.  Whether a windstorm caused the oil leakage is a disputed fact issue that bars summary judgment.

///

///

---

covered.  If, however, the water migrates into an electrical box and causes an electrical short which in turn causes a fire, then the fire damage is a covered "ensuing loss."  *Id.*

III.    **Tree Removal Expense**

Another remaining issue concerns the claim by the Konell Estate for the reasonable expense (at most $500.00) for the removal of a felled tree from the driveway that blocked access to vehicles.  Policy,  Section 1 – Property Coverages, ¶ E.1.b.[3]  However, the insured did not pay anyone to remove that tree since Kyle Konnell, the insured's son, provided his labor for free.

Nationwide argues that the Policy does not provide coverage because:  (1)  the tree did not prevent vehicles from entering or exiting the premises; (2) there is no evidence that a windstorm felled the tree; and (3) the Konell Estate is not entitled to money damages to compensate for "self help."  After the hearing, this Court asked the parties to attempt to resolve this claim.  However, they were unable to do so due to the dispute as to whether the tree was felled by a windstorm.

Two of Nationwide's arguments in support of summary judgment on this claim must be rejected.  First, the record reveals that the felled tree did block the driveway.  In support of its position, Nationwide cites the deposition testimony of Kyle Konell that his girlfriend exited the property in her car without difficulty.  However, Kyle Konell testified that his girlfriend had to drive down through a field to a neighbor's driveway in order to get out.  Konell Depo. (attached to Johnson Aff.), p. 27.  Kyle Konell also testified that he could not leave the house because of the tree down across the driveway and had to remove the tree before he could get his car out.  *Id* at 18-19.

---

[3]  This provision states as follows:
    b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:
    1) Your tree(s) felled by the peril of Windstorm . . .
    provided the tree(s): . . .
    4) a)  Blocks a driveway on the "residence premises" which prevents(s) a "motor vehicle" that is registered for use on public roads or property from entering or leaving the "residence premises" . . .
    No more than $500 of this limit will be paid for the removal of any one tree.

Second, the tree clearly was felled by a windstorm.  The Konell Estate has submitted

meteorological records of strong east winds and a weather report referring to the event on

January 17-19, 2009, as a "windstorm."  Webber Aff., Exs. 2 & 3.  Kyle Konell also described it

as a "windy night" that felled at least one big 50-80' tree.  Konell Depo., pp. 16, 20.  Nationwide

has offered nothing to oppose this evidence.

However, the third argument by Nationwide for summary judgment has merit.  Nothing

in the Policy defines what constitutes a "reasonable expense," and the parties have cited no case

law interpreting that term.  The Policy provides only that if the insured and Nationwide "fail to

agree on the amount of the loss, either may demand an appraisal of the loss."  Policy, Section I –

Conditions, ¶ E.

In interpreting terms in an insurance policy, this court is bound by the interpretive

framework set forth by the Oregon Supreme Court in *Hoffman Constr. Co. of Alaska v. Fred S.

James & Co. of Or.*, 313 Or 464, 836 P2d 703 (1992), and its progeny.  *See Dewsnup v. Farmers

Ins. Co. of Oregon*, 349 Or 33, 39-40, 239 P3d 493, 496-97 (2010) (delineating and applying the

Hoffman interpretive framework); *Holloway v. Rep. Indem. Co. of Am.*, 341 Or 642, 649-50, 147

P3d 329, 333-34 (2006) (same); *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or 303, 307-13,

985 P2d 1284, 1287-90 (1999) (same).  Pursuant to the Hoffman framework, the question of

policy interpretation is one of law, and "'[t]he primary and governing rule of the construction of

insurance contracts is to ascertain the intention of the parties.'"  *Hoffman*, 313 Or at 469, 836

P2d at 706, quoting *Totten v. N.Y. Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082, 1086 (1985)

(brackets in original).  The parties' intent is determined "based on the terms and conditions of the

insurance policy" itself.  *Id*.  Accordingly, in construing a particular term, the court first looks to

any definition provided in the policy.  *Id*; *Groshong*, 329 Or at 307-08, 985 P2d at 1287.   If the

policy does not define the term or phrase at issue, the court must "'resort to various aids of interpretation to discern the parties' intended meaning.'" *Holloway*, 341 Or at 650, 147 P3d at 333, quoting *Groshong*, 329 Or at 307-08, 985 P2d at 1287.  The first step in this process is to determine whether the term has a "plain meaning, *i.e.*, whether it is susceptible to only one plausible interpretation." *Id*, 341 Or at 650, 147 P3d at 333 (internal quotations, citation omitted).  If the phrase has a plain meaning, then the court applies this meaning without further analysis. *Id.*  If the phrase is susceptible of more than one plausible interpretation, then the court proceeds to the second interpretive aid, namely an analysis of the phrase "in light of the particular context in which [it] is used in the policy and the broader context of the policy as a whole." *Id* at 650, 147 P3d at 334 (internal quotations, citation omitted).  If the phrase remains ambiguous, then, and only then, "any reasonable doubt as to the intended meaning of such a term will be resolved against the insurance company." *Id* (internal quotations, alterations, and citation omitted).

Given the absence of any definition in the Policy, this court turns to other aids of interpretation.  An "expense" is "commonly understood to mean 'something that is expended in order to secure a benefit or bring about a result' or 'the financial burden involved typically in a course of action or manner of living:  cost.'" *In re Baker*, 232 Or App 646, 658, 223 P3d 417, 424 (2009), quoting Webster's Third New Int'l Dictionary 800 (unabridged ed. 2002).  Thus, the only plain meaning of a "reasonable expense" is one for which the insured has disbursed money. This is not a situation whether the insured paid anything out-of-pocket to a third party to remove the tree or lost his own time to do so.  Instead, Kyle Konell voluntarily spent several hours cutting the tree into pieces.  Konell Depo., p. 20.  The issue is whether Kyle Konell's time constitutes a "reasonable expense" to the insured.  Although his labor was worth something to

Kyle Konell, he provided it free of charge.  Due to his volunteer efforts, the insured did not pay

anything  or incur any expense to have the tree removed.  Therefore, the Konell Estate has

incurred no expense for Nationwide to pay for removal of the tree.

Accordingly, even if the Policy covers removal of the tree, Nationwide is entitled to

summary judgment as to the damages sought on this claim.

## **<u>ORDER</u>**

For the foregoing reasons, defendant's Motion for Summary Judgment (docket #34) is

GRANTED as to plaintiff's claim for the reasonable expense for the removal of a felled tree and

is otherwise DENIED.

DATED  July 19, 2013.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge